Reed vs. The City of Madison.

---

REED, Respondent, vs. THE CITY OF MADISON, Appellant.

*September 7 — September 26, 1893.*

*Appeal: Review of evidence: Motion for new trial: Injury from defective sidewalk: Evidence: Res gestæ: Expert testimony: Improper remarks of counsel: Special verdict: Instructions to jury.*

1. Where no motion for a new trial was made until after judgment was entered, and the judgment only is appealed from, this court will not review the evidence to determine whether it sustains the verdict.

| 85 | 667 |
| d90 | 137 |
| 85 | 667 |
| 92 | 653 |
| 85 | 667 |
| 94 | 347 |
| 85 | 667 |
| 97 | 295 |
| 85 | 667 |
| 100 | 502 |
| 85 | 667 |
| 102 | 223 |
| 103 | 385 |
| 85 | 667 |
| 105 | 20 |
| 105 | 93 |
| 85 | 667 |
| L114 | 1191 |

Reed vs. The City of Madison.

2. The act of an eyewitness in pointing out to another person the exact place of an accident a few minutes after it occurred pertains to the *res gestœ*, and such other person may properly testify to the location of the place thus pointed out.

3. The improper admission of evidence is not a material error where other and competent evidence to the same effect is uncontradicted or is overwhelming.

4. In an action to recover for injuries to plaintiff's eye it was proper to permit an expert to testify that in his opinion it was necessary to remove the injured eye to save the sight of the other eye, which was endangered by sympathetic inflammation.

5. After plaintiff's counsel had said in his argument to the jury that a witness for the defense had volunteered two statements, and defendant's counsel had objected to argument in respect thereto, a colloquy ensued between court and counsel in which it was suggested that the testimony in question had been stricken out, as in fact it had been in part, but the court seemed to think otherwise. No argument on such testimony was made, however, and the subject was dropped. *Held*, that there was no material error.

6. The refusal to submit questions for a special verdict in the form in which they are proposed is not error if they are substantially and intelligibly submitted in other forms.

7. It is not error to refuse to submit for a special verdict questions as to which there is no evidence.

8. Where the jury are to find a special verdict only, the giving of a general charge on the law of the case is not good practice but is not necessarily error. The general charge in this case not having been such as to indicate how the jury should find upon any given question of fact or to interfere with the proper consideration and determination of each question independently of all others, the giving thereof was not error. *Ryan v. Rockford Ins. Co.* 77 Wis. 611, distinguished.

APPEAL from the Circuit Court for *Dane* County.

On September 11, 1878, at about 6 P. M., the plaintiff fell upon a sidewalk on the southeast side of Main street in the city of Madison, opposite a certain lot owned by Gen. Harnden, and was injured. She was then between seven and eight years of age. In February, 1892, after plaintiff had reached her majority, she brought this action against the city to recover damages for such injury, on the alleged

ground that the same was the result of the defective condition of the sidewalk, of which defect the city had due and timely notice. The cause was in this court at a former term on an appeal from an order sustaining a general demurrer to the complaint. It was held that the complaint states a cause of action against the city, and the order sustaining the demurrer thereto was accordingly reversed. 83 Wis. 171.

The substance of the complaint (which, for convenience, will be repeated here) is thus stated by Mr. Justice Orton in his opinion on that appeal: "The plaintiff, who lived with her father and mother near that place, started to go on said sidewalk westerly to the junction of Broom and Main streets, to visit and play with some playmates of hers at that place, taking with her a hoop and a pine stick about eighteen inches long to propel and guide it with. While she was running slowly down the sidewalk towards her place of destination, guiding and following her hoop, which ran down the walk by its own momentum slightly faster than an ordinary pedestrian would usually walk, and while using due care, the end of one of the boards of the walk, which stuck up several inches above the other boards and the general level of the walk, caught her foot and threw her violently down, and caused the stick she held in her hand to penetrate her left eye and to destroy its sight; and the sight of her right eye, by sympathy, was thereby also partially lost."

The defendant city thereafter answered: (1) A general denial; (2) a denial of notice to the city of the existence of any defect in the sidewalk in question; and (3) a charge of contributory negligence on the part of plaintiff and her parents. The cause was tried at the April term, 1893, of the circuit court, before the court and a jury. On demand of the city the jury returned a special verdict, which is as follows: "(1) Was the sidewalk at the place in question in

Reed vs. The City of Madison.

a reasonably safe condition of repair for the usual purposes of persons passing over the same? *Answer.* No. (2) If you find in answer to the foregoing question that the sidewalk was not in a reasonably safe condition of repair, then say whether such want of repair was the cause of the accident in question. *A.* Yes. (3) If you find in answer to the first question that the sidewalk was not in a reasonably safe condition of repair, then say whether it had been in want of such repair for such a length of time prior to the accident that the city officers, in the exercise of reasonable diligence, ought to have discovered it and have remedied the defect. *A.* Yes. (4) Do you find that the plaintiff, at the time of the accident, was using the sidewalk merely for the purpose of playing, or do you find that she was traveling on the sidewalk to meet her playmates? *A.* She was traveling to meet her playmates. (5) Was the plaintiff, at the time of the accident in question, guilty of any want of such ordinary care as the great mass of ordinarily prudent children of her age and capacity exercise under like circumstances, which directly contributed to cause the accident in question? *A.* No. (6) If, upon your answers to the foregoing questions, it is found that the plaintiff is entitled to a judgment in her favor, at what sum do you assess the plaintiff's damages? *A.* $3,000."

Before any motion for a new trial was made, judgment was duly entered on the verdict for plaintiff for $3,000 and costs. After the entry of judgment, but during the term in which the cause was tried, a motion on behalf of the city to vacate the judgment and for a new trial was made and denied. No appeal has been taken from the order denying such motion. The case is further stated in the opinion. The city appeals from the judgment.

*Burr W. Jones* and *Charles M. Morris*, for the appellant, contended, *inter alia*, that it was error to permit Mrs. Sawyer to testify that Dr. Shipman pointed out to her the place

where the accident happened. That testimony relates to declarations accompanying an independent act, occurring after the main transaction had wholly closed, the circumstances had shifted, and all the parties had for a considerable time been gone from the *locus in quo.* Starkie, Ev. 51, 52; *Pool v. Bridges,* 4 Pick. 378; *Sorenson v. Dundas,* 42 Wis. 642; *Felt v. Amidon,* 43 id. 467; *Mutcha v. Pierce,* 49 id. 231; *Waldele v. N. Y. C. & H. R. R. Co.* 95 N. Y. 274; *Savannah, F. & W. R. Co. v. Holland,* 82 Ga. 257; *Leahey v. C. A. & F. G. R. Co.* 97 Mo. 165; *Comm. v. James,* 99 Mass. 438; *Durkee v. Cent. Pac. R. Co.* 69 Cal. 533; *Galveston v. Barbour,* 62 Tex. 172, 50 Am. Rep. 519; 1 Greenleaf, Ev. secs. 108, 110; *Lund v. Tyngsborough,* 9 Cush. 36.

For the respondent there was a brief by *Spooner, Sanborn & Kerr,* attorneys, and *Rufus B. Smith,* of counsel, and oral argument by *A. L. Sanborn* and *Rufus B. Smith.* They argued, among other things, that the admission of Mrs. Sawyer's testimony is well supported by the authorities, which hold that statements of third parties may be given by a witness in order to fix an occasion or a date. 1 Greenleaf, Ev. sec. 100; *State v. Fox,* 25 N. J. Law, 566, 602; *Harris v. Central Railroad,* 78 Ga. 525; *Hill v. North,* 34 Vt. 604, 616.

LYON, C. J. The record and arguments in this action forcibly impress upon our minds the fact that the average action to recover damages for injuries alleged to have been caused by negligence is, so to speak, a mine, in which the inducements to dig and search for error are exceptionally enticing and often prove irresistible to ingenious and acute counsel. Hence it is that while the general principles of the law of negligence are well settled and easily understood, and while the proper application of those principles is not often very difficult, appeals in actions for negligence are usually more prolific in allegations of error than in any

other class of actions. The present case is no exception to the usual rule. Every error or suspicion of error disclosed in the record which the industry and acumen of the able counsel could possibly discover has been brought to view and skilfully marshaled in their arguments for attack on the judgment of the circuit court. If we may be permitted to continue the metaphor in connection with a somewhat homely expression, we should say that this particular mine has been worked by counsel for the city for all it is worth. This court is now required to determine the quality of the product. With these preliminary observations (which, perhaps, might as well have been omitted) we proceed to the consideration of the errors alleged for a reversal of the judgment.

I. At the close of the testimony, counsel for the city moved the court to direct the jury to return a verdict for the city, for the alleged reason that there is not sufficient testimony to support a verdict for plaintiff. The court refused to give such direction. We think the testimony is sufficient to uphold a finding that all the material allegations of the complaint are true. It having been held on the former appeal that the complaint states a cause of action against the city, such testimony necessarily supports a verdict for plaintiff; hence the court properly refused to direct a verdict against her.

But were the proofs insufficient to support a verdict for plaintiff, still the refusal by the court to direct a verdict for the city would not be sufficient ground for a reversal of the judgment. The reasons are, no motion for a new trial was interposed before the judgment was entered, and no appeal has been taken from the order denying the motion for a new trial made after judgment. The law is that this court cannot properly review the evidence to determine whether it does or does not support the verdict and judgment, unless a motion for a new trial was submitted

to the trial court. In the absence of such motion, this court has said: "The verdict must be taken as sustained by the evidence, and the only questions to be inquired into upon an appeal from the judgment are the errors, if any, arising upon the trial in the admission or rejection of evidence, in the instructions of the court to the jury, or otherwise in the conduct of the trial." *Anstedt v. Bentley*, 61 Wis. 629. See, also, the cases cited in the opinion by Mr. Justice TAYLOR. The fact that a motion for a new trial was made at the trial term, but after judgment, and denied, is of no importance on this appeal from the judgment alone, for the reason that such an appeal does not bring up for review proceedings after judgment. *Weis v. Schoerner*, 53 Wis. 72; *Morris v. Niles*, 67 Wis. 341. Because it does not, we cannot consider the motion for a new trial and are powerless to review the evidence. The verdict is conclusive of the facts found therein.

II. It is maintained that the court admitted improper testimony against objections on behalf of the city. On the trial it became material to plaintiff's case to show that she tripped and fell at the upper line of Gen. Harnden's lot. Dr. Shipman, one of plaintiff's witnesses, testified that he was near plaintiff when she was hurt; that she passed him on the sidewalk, going in the same direction but faster than he was walking, rolling a hoop; that he saw her fall upon the sidewalk about twenty-five feet ahead of him; and that he picked her up and took her to the house of her parents, which, it appears, was quite near the place where she was injured,— only three or four houses therefrom. The witness also testified, without objection, that his recollection was that plaintiff fell near the northeast or upper line of Gen. Harnden's lot, and that a few minutes after the accident, after he had taken plaintiff home, he went to the spot with one Dora Stewart, now Mrs. Sawyer, and pointed out to her the place where plaintiff fell. Mrs.

Sawyer was also called by plaintiff as a witness, and testi-
fied that she lived across the street from plaintiff's home,
and was sent for and went there when plaintiff was injured,
and that she met Dr. Shipman there. Mrs. Sawyer was
permitted to testify, against objection, that after some con-
versation with Dr. Shipman they went down the walk and
he pointed out to her the upper line of Gen. Harnden's
lot as the place where plaintiff fell. It is claimed on be-
half of the city that the testimony of Mrs. Sawyer, thus
objected to, was improperly received, and that the error
is fatal to the judgment.

The action was tried more than fourteen years after
plaintiff was injured. Owing to the great lapse of time
between the injury and trial, there was an element of
doubt running through the testimony of Dr. Shipman, and
he could only locate the place of injury according to his
best recollection. But he gave data by reference to which
it was possible to remove that doubt in a great measure.
He knew he had pointed out the place to Mrs. Sawyer a
few minutes after the accident. What reasonable objection
can be made to allowing Mrs. Sawyer, who remembers the
place thus pointed out, to testify to its location? Suppose
in some action the date of a certain circumstance which
transpired years before is material, and a witness who was
present when it transpired testifies to his recollection of
such date, and that it certainly occurred on the day a cer-
tain written instrument bears date; is there a reasonable
doubt of the right of either party to introduce the instru-
ment to show the true date of the event? We cannot
sanction any rule of evidence which excludes such proof in
a case like that supposed. In principle this is just such a
case.

We do not care to pursue this discussion further, for the
reason that we think the act of Dr. Shipman in pointing
out to Mrs. Sawyer the place of injury pertains to the *res*

*gestæ*, and hence that the testimony of Mrs. Sawyer locating the place thus pointed out to her was admissible, within the rule of *Hermes v. C. & N. W. R. Co.* 80 Wis. 590, and the cases cited by Cole, C. J., in the opinion, particularly that of *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 547.

Moreover, the proof is overwhelming that plaintiff was injured at the upper line of Gen. Harnden's lot, and it is highly probable that a finding that it was received elsewhere would have to be set aside as against evidence. In such case no harm was done the city by the admission of the. testimony, even were it improperly admitted.

2. Dr. E. W. Bartlett, of Milwaukee, a well-known expert in the treatment of diseases of and injuries to the eye, was a witness for plaintiff. He testified that he treated plaintiff in 1886 and removed the injured eye, which was totally sightless, to save the sight of her other eye, which was being impaired, and that he had her under his charge for several weeks, and had a distinct recollection of her case. He was allowed to testify, against objection on behalf of the city, to many circumstances connected with the injury of plaintiff and her condition and treatment after she was injured, which were related to him by the plaintiff and others, but of which he had no personal knowledge. It is claimed that this is mere hearsay evidence and therefore inadmissible. Concede that it is hearsay evidence; there is not a material fact stated by Dr. Bartlett to have been told him by others which is not abundantly proved by other and competent evidence which is entirely uncontradicted. Hence, if any of such alleged hearsay evidence should have been excluded, its admission could not possibly have worked any harm to the city, and the error, if error was committed, will not work a reversal of the judgment.

3. Dr. Fox testified for plaintiff, as an expert, under objection on behalf of the city, that in his opinion it was nec-

Reed vs. The City of Madison.

essary to remove plaintiff's injured eye to save the sight of her other eye, which was endangered by sympathetic inflammation. We are unable to conceive of any possible valid objection to this testimony. Plaintiff had the right to inform the jury of the nature and actual and probable results of the injury complained of. The testimony of Dr. Fox was in that direction, although perhaps cumulative to the testimony of Dr. Bartlett. Here, again, the fact that it was necessary to remove the injured eye to save the sight of the other was conclusively established by competent and uncontradicted testimony.

We conclude that no reversible error was committed in the rulings of the court admitting testimony against objections thereto in behalf of the city.

III. It is further claimed that counsel for plaintiff was allowed to prejudice the jury against the city by improper argument. Commenting upon the testimony of Gen. Harnden, a witness for the city, Mr. Sanborn said: "A witness always gets into trouble when he volunteers testimony. Gen. Harnden volunteered two statements — first, that the ends of the boards ran over his line (in order to remove moral responsibility for the accident); and the second was that he fixed the walk after the accident." Counsel for the city said: "I except to any argument on that testimony. It is improper, and it was not in response to any question." There was a colloquy between court and counsel in which it was not denied that Gen. Harnden testified as stated, but it was suggested that his testimony had been stricken out. So far as the repair of the walk was concerned it had been stricken out, but the court seemed to think otherwise. However, no argument was made on such testimony and the whole subject was there dropped. We find in all this no material error.

IV. Under this head will be considered errors assigned upon the form of the special verdict, and the refusal of the

court to submit to the jury certain questions proposed on behalf of the city. The questions submitted are, in brief: (1) Was the sidewalk in question in proper repair for the use of travelers thereon? (2) If not, was the insufficiency thereof the cause of the injury complained of? (3) If insufficient, had it been so prior to the accident so long that the proper city officers, in the exercise of reasonable diligence, ought to have discovered and repaired the defect before the accident? (4) Was the plaintiff, when injured, using the sidewalk merely for the purpose of play, or was she traveling thereon to meet her playmates? (5) Was the plaintiff guilty of any want of such ordinary care as the great mass of ordinarily prudent children of her age and capacity exercise under like circumstances, which directly contributed to cause the accident in question? And (6) what damages has the plaintiff suffered by reason of her injuries?

In the arguments in behalf of the city, there is considerable criticism upon the form of the questions thus submitted to the jury, and it is claimed that the jury may have misunderstood them. We think, however, that the substance of them is fairly stated in the above summary, and that there is no room for an intelligent juror to misapprehend their meaning.

On behalf of the city, the court was asked to submit several other questions to the jury, but refused to do so, except as they are included in the questions submitted. Some of them are specifically included in those submitted. These are: "Was the walk, at the place complained of, reasonably safe for the use of travelers on the street? Do you find that the condition of the walk was the proximate cause of the injury to the plaintiff's eye? Do you find that the plaintiff, at the time of the accident, was using the sidewalk merely for the purpose of playing?"

The following proposed questions are also substantially

Reed vs. The City of Madison.

included in those submitted: "Do you find that the plaint-
iff fell by reason of catching her foot against the end of a
plank? If you so find, was such end of the plank opposite
the north end of the lot named in the complaint? About
how many feet from the northeasterly corner of the lot
was the plaintiff found after the accident? Do you find
that at the time of the accident the plaintiff was rolling her
hoop in the manner usual to children of her age? Do you
find that the rolling of the hoop in any way prevented the
plaintiff from using ordinary care? Do you find that at
the time of the accident the plaintiff was playing upon the
street?" Assuming their materiality, we think it was
within the sound discretion of the trial court to refuse to
submit the above questions in the specific form proposed,
inasmuch as they were substantially and intelligibly sub-
mitted in other forms.

The remaining questions which the court refused to sub-
mit to the jury are: "Do you find that the city officers had
any actual notice of the condition of the walk before the
accident? Do you find that the negligence of the parents
of the plaintiff contributed to the injury?" There is no
testimony which calls for the submission of either of these
questions to the jury. The question of constructive notice
to the city was submitted, and did the testimony warrant
the submission of the question of actual notice the refusal
to submit it was favorable to the city. There is no testi-
mony to warrant a finding of the contributory negligence
of plaintiff's parents.

We conclude that proper questions as the basis of a spe-
cial verdict were submitted to the jury.

V. Numerous errors were assigned for the city upon the
instructions given by the court to the jury, and the refusal
of the court to give certain other instructions proposed in
its behalf. These will now be considered, but in doing so
we must be excused from stating or discussing at length

the charge and proposed instructions. They have been carefully examined, and we are prepared to express the opinion that the charge contains a correct statement of the law of the case, and that everything material and correct in the proposed instructions is sufficiently given in the charge. Indeed, as already indicated, the law of negligence is so well settled that in an ordinary case it would be somewhat surprising if a trial court should go far wrong in stating it to a jury.

There is, however, one feature of the charge which seems to require more particular notice. No general verdict was returned, and the case went to the jury for a special verdict alone; yet the court charged the jury on the law of the case as though they were to return a general verdict. That is to say, the jury were told that in order to entitle the plaintiff to judgment they must find that she was injured by reason of the insufficiency of the sidewalk; that she was a traveler thereon; that the city officers had constructive notice of the defect in the sidewalk and should have repaired it before the accident; and that the plaintiff was not guilty of any want of ordinary care (regard being had to her age and capacity) which contributed directly to the injury. It is urged with much apparent force that this was informing the jury how they must shape their verdict to entitle one party or the other to judgment upon it, and brings the case within the rule of *Ryan v. Rockford Ins. Co.* 77 Wis. 611. But a little examination will show that the *Ryan Case* differs materially from the present case. In the *Ryan Case* it was held that the effect of the instructions there in question was very much the same as it would have been had the jury been told that, after they had determined their general verdict, they should answer the special questions submitted to them in the way the court indicated would be consistent with such general verdict. Of course, the tendency of such instructions would necessarily be to

confuse the jury and divert their minds from that close and independent consideration of each question of fact submitted which the law demands, and to secure which is the main purpose of a special verdict. In the present case, however, the instructions do not, as in that case, indicate how the jury should find upon any given question of fact, or interfere with the proper consideration and determination of each question submitted, independently of all others.

While a general statement of the law of a given case to the jury where only a special verdict is called for seems out of place, and is not to be commended, and, if given, might in some cases be error, we are not prepared to hold that the practice is erroneous in all cases or in the present case.

The questions here submitted to the jury are in logical and legal sequence. It would have been entirely competent and proper had the court instructed the jury that, if they found the sidewalk in a reasonably safe condition, the answer would be fatal to the action and they need not answer any other question submitted for a special verdict; or that, finding such insufficiency but failing to find it caused the accident, they need go no further, because it is essential to the plaintiff's right to recover that the injury be caused by the defect; or that, finding the insufficiency and that the accident was caused by it, should they fail to find timely notice to the city of the defect they might stop there, because such notice is essential to the plaintiff's right of action. And so the jury might properly have been told that if plaintiff was on the sidewalk merely for the purpose of play, or if she was guilty of contributory negligence, she could not recover and no assessment of damages would in such case be required.

Had the court omitted the general statement of the law of the case, and charged the jury as above indicated, specifically upon each question submitted, we think no one would claim that it was error. Yet such instructions would

give the jury the general law of the case, and inform them how to shape their answers to secure a judgment for one party or the other, just as effectually as such information was imparted in the charge of the court actually given. So in this particular case, for the reasons suggested, we are impelled to hold that it was not error to charge the jury generally on the law of the case. *Chopin v. Badger Paper Co.* 83 Wis. 192.

It is believed that the foregoing observations dispose of all the alleged errors which are material to a. correct determination of the case. We fail to find in the record any reversible error.

*By the Court.*— The judgment of the circuit court is affirmed.