Kaples vs. Orth and another.

Kaples vs. Orth and another.

*November 11 — November 25, 1884.*

*Negligence: Court and jury: Evidence.*

1. Negligence is an inference to be drawn from the facts and circumstances disclosed by the evidence. When such facts and circumstances, though undisputed, are ambiguous and of such a nature that reasonable men unaffected by bias or prejudice may disagree as to the inference or conclusion to be drawn from them, the question should be submitted to the jury.

2. Upon the evidence in this case it is *held* that the question of the contributory negligence of the plaintiff, who was injured, while sitting upon a stairway leading to a basement, by a block of ice which fell from the shoulder of defendant's servant who was carrying it down to such basement, and the question of the negligence of such servant in carrying the ice, were properly submitted to the jury.

APPEAL from the County Court of *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"The defendants, as partners, were dealers in ice, which they delivered to their customers in the city of Milwaukee. The plaintiff was a dealer in fruits, etc., and had a stand on the corner of Division and East Water streets, in Milwaukee. In the basement of the building on such corner was a fish-market, with access to it by stairs leading down on the East Water street side of the building. On the day of the injury in question it was very hot, and the plaintiff, being oppressed with the heat, seated herself in the shade upon the upper step of said stairs, and leaned against the building to rest. While there, the defendants' wagon, loaded with ice, stopped near, and one of the defendants' servants, by the name of Krumner, engaged in delivering the ice, took a cake of ice, weighing about fifty or sixty pounds, on his shoulders with his tongs, and started to carry it down to the fish-market. While passing down from the upper step, the ice fell from the tongs, striking the hand of the

plaintiff which rested on the surface of the step, thereby causing severe injury.

"On the trial, the jury returned a verdict for the plaintiff and against the defendants for $1,200. From the judgment entered thereon the defendants appealed."

*J. C. McKenney*, for the appellants.

For the respondent there was a brief by *Austin & Runkel*, and oral argument by *Mr. Austin*.

CASSODAY, J. The mere fact that the plaintiff on a hot day left her place of business and sat down upon the stairs near by in the shade to rest, does not authorize us to say as a matter of law that she was guilty of contributory negligence (*Murray v. McShane*, 52 Md. 217; *S. C.* 36 Am. Rep. 369); especially upon her testimony, which the jury may have found to be true, to the effect that she did not know of the presence of the servant of the defendants until just at the time of the injury. The servant testified that he had just previously passed down and up the stairs. But she testified that she did not see him pass down or up. She had the right to presume that any person having occasion to pass up or down the stairs would exercise ordinary care in doing so.

There being no contract relation between the plaintiff and the defendants it was incumbent upon her to give evidence tending to prove negligence on the part of the defendants or their servant. Wharton on Negligence, sec. 421. It is claimed on the part of the plaintiff that the evidence does tend to prove such negligence. On the part of the defendants it is claimed that it does not. All the witnesses agree that just as the servant started to go down the stairs the ice fell from his shoulders and struck the plaintiff's hand. All agree that the tongs were furnished by the defendants, and in good condition and repair. Some of the witnesses testify that he took the ice onto his shoulders from the

wagon, and continued to keep it there until he started down the stairs, when it fell. Others say he put the ice down on the walk near where the plaintiff sat, and then caught hold of it with the tongs "and slung it over his shoulders and it dropped right down on her." The expert testimony was to the effect that cakes of ice of that size were generally carried upon the shoulders, and that they were not so apt to drop out of the tongs when so carried as when carried in some other way, and that if a person so carrying such piece of ice exercised proper care there was no danger of its falling, unless a piece of ice should break off at the point where the tooth or prong of the tongs penetrated it.

Such being the nature of the evidence, can we say, as a matter of law, that there was no negligence? Generally that question is for the jury, especially where the standard of duty is a shifting one. It has been aptly said that "negligence, in one sense, is a quality attaching to acts, dependent upon and arising out of the duties and relations of the parties concerned, and is as much a fact to be found by the jury as the alleged acts to which it attaches by virtue of such duties and relations." It is not a conclusion to be testified to by witnesses, but an inference to be deduced from the facts and circumstances disclosed by the evidence. When such facts and circumstances are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge may take the case from the jury. When such facts and circumstances, though undisputed, are ambiguous, and of such a nature that reasonable men, unaffected by bias or prejudice, may disagree as to the inference or conclusion to be drawn from them, then the case should be submitted to the jury. *Townley v. C., M. & St. P. R'y Co.* 53 Wis. 633; *Hill v. Fond du Lac*, 56 Wis. 246; *Nelson v. C., M. & St. P. R'y Co.* 60 Wis. 320; *Abbett v. C., M. & St. P. R'y Co.* 30 Minn. 483.

Here the servant of the defendants and the force of grav-

ity were the active agencies in producing the injury. The strength of the servant was applied to the tongs. The force of gravity operated upon the ice. The standard of duty shifted with every new movement of the servant. The servant saw the woman sitting on the stairs, and his standard of duty necessarily became more exacting as he approached the place where she sat. This would be so, even if he took the ice upon his shoulders at the wagon, and continued to keep it there until it fell. But it would be so in a still higher degree if he first put the ice on the walk near where the woman sat, and then took it with his tongs and slung it onto his shoulders, as described by some of the witnesses. That act of itself necessitated the application of a good deal of force. It moreover involved an exercise of special skill and the exercise of special care. Obviously, the ice would be more apt to slip out from the tongs while being so taken from the walk and slung upon the shoulders, than while being carried upon the shoulders after being placed there and properly adjusted. Hence, under one phase of the evidence, ordinary care would require greater circumspection than under another. With such exercise of ordinary care in carrying the ice, say the experts, there would be no danger of its falling, unless a piece of ice should break off where the tongs were attached. The servant testified that he was putting all his strength to it at the time. In another place he says he thought at the time that he was careless, because nothing of the kind ever happened to him before. Whether a piece of the ice so broke off or not does not appear. Whether he was at the time exercising such ordinary care does not appear, unless it be inferred from the facts that he was at the time putting all his strength upon it, and that it was customary to carry ice upon the shoulders. But it may be that this special exertion of strength was in consequence of taking the ice up from the walk, thereby causing a piece to break off, and this being

done so near the plaintiff may have unnecessarily exposed her to the extra hazard incident to the servant's extra exertion. This the jury may possibly have found to be a want of ordinary care. The facts and circumstances disclosed were at least ambiguous, and the inferences to be drawn from them conflicting.

It is to be remembered that the servant of the defendants was the active agency, and had full control and management of the cake of ice in question. This being so, and the accident being such as would not in the ordinary course of things have happened if the servant had been in the exercise of proper care, and in the absence of any evidence tending to show that a piece of the ice broke off while the cake was being carried with ordinary care, we must hold that the jury were authorized to infer, from all the facts and circumstances disclosed, negligence on the part of the servant of the defendants. *Scott v. London & St. K. Docks Co.* 3 Hurl. & C. 596; *Kearney v. L., B. & S. C. R'y Co.* L. R. 5 Q. B. 411; *S. C.* L. R. 6 Q. B. 759; *S. C.* 2 Thomp. on Neg. 1220; *Mullen v. St. John,* 57 N. Y. 567; *Transportation Co. v. Downer,* 11 Wall. 129; *Murray v. McShane,* 52 Md. 217; *Rose v. Stephens & C. Transp. Co.* 11 Fed. Rep. 438; *S. C.* 13 Reporter, 421; *Cummings v. Nat. Furnace Co.* 60 Wis. 603. In such case it is hardly accurate to say that negligence is presumed from the mere fact of the injury, but rather that it may be inferred from the facts and circumstances disclosed, in the absence of evidence showing that it occurred without the fault of the defendant. In such case the facts and circumstances speak for themselves, and, in the absence of such explanation or disproof, give rise to the inference of negligence. Such a case comes within the principle of *res ipsa loquitur. Briggs v. Oliver,* 4 Hurl. & C. 407; *Carpue v. London & B. R'y Co.* 5 Q. B. 751; Cockburn, C. J., and Kelly, C. B., in *Kearney v. L., B. & S. C. R'y Co., supra.*

Since a jury may draw any legitimate inference from the unqualified and unrestricted facts and circumstances disclosed in the evidence, it follows that they would not be authorized to come to the same conclusion if such inference had been wholly removed by evidence.    The case before us is certainly on the border line, and close to the line at that.    We should be equally tender and respectful of the verdict had it been the other way.

The verbal criticisms upon portions of the charge have not been overlooked, but they are too refined to require special consideration.    As it is, the judgment of the county court must be affirmed.

*By the Court.*— Judgment affirmed.